1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8              FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   ANDREW L. WHITE,                          No.  2:14-cv-1427-EFB P

11                    Petitioner,

12          vs.

13   DAVE DAVEY,                               ORDER

14                    Respondent.

15

16          Petitioner is a state prisoner proceeding without counsel with a petition for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.[1]  He challenges a 2010 judgment of conviction

18   entered against him in the Sacramento County Superior Court on charges of robbery, false

19   imprisonment, evading a peace officer, and six weapons-use enhancements.  He seeks federal

20   habeas relief on the following grounds: (1) the prosecutor's failure to call a percipient witness

21   violated his Sixth Amendment right to confrontation; (2) he was denied his Fourteenth

22   Amendment right to a fair trial because photographs that should have been excluded under

23   California Evidence Code § 352 were admitted and used against him; and (3) the prosecutor

24   violated his right to due process during closing argument by making misstatements about the

25   evidence.  Upon careful consideration of the record and the applicable law, the undersigned will

26   deny petitioner's application for habeas corpus relief.

27   _____

28          [1] The parties in this action have consented to proceed before a United States Magistrate
     Judge pursuant to 28 U.S.C. § 636(c).

**I. Background**

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> A jury found defendant, Andrew White, guilty of five robberies, committed during four separate incidents, and other crimes and weapons use clauses, conducted over several days involving two convenience stores, one targeted on three occasions. The jury also found defendant guilty of evading a peace officer and driving recklessly during a high speed chase following the final robbery. He was sentenced to 26 years eight months in state prison.
>
> Defendant appeals.
>
> We appointed counsel to represent him on appeal. Counsel filed an opening brief setting forth the facts of the case and, pursuant to *People v. Wende* (1979) 25 Cal.3d 436, requesting the court to review the record and determine whether there are any arguable issues on appeal. Defendant was advised by counsel of the right to file a supplemental brief within 30 days of the date of filing of the opening brief.
>
> Defendant filed a supplemental brief in which he claims his convictions must be reversed due to the erroneous admission of evidence, insufficient evidence of identification, and prosecutorial misconduct. He also claims various errors were made in his sentencing, including the fines. We conclude all these claims lack merit with the exception of one: the trial court did not apply the correct legal standard when ruling on whether Penal Code section 6541 prohibited multiple punishment for counts one and two, the robbery and false imprisonment committed during the first incident. We remand solely to permit the trial court to apply the proper analysis in the matter of counts one and two, and resentence if appropriate.
>
> **PROCEDURAL AND FACTUAL BACKGROUND**
>
> All of the robberies were captured by video surveillance cameras.
>
> The first robbery occurred on July 3, 2008, at American Food Store. A store employee, Onkar Singh, was in the process of turning off the lights and setting the alarm, when two robbers entered the store with their faces covered, holding knives. One robber was wearing a blue hooded sweatshirt, a hat, and gloves; and the other had on a black sweater. The robber in the blue sweatshirt jumped over the front counter, while the other came around the counter. The robbers ordered Singh to open the cash register. They also told him to put some Patron tequila in a bag. When Singh was not able to open the store safe, one of the robbers punched him in the face. The robbers broke the telephone in the store and took Singh's wallet. The robber in the blue sweatshirt grabbed Singh by the neck

and walked him to a room at the back of the store, where he pushed Singh onto the floor and locked him inside.[2]  The two robbers then left the store.

After 10 minutes, Singh was able to break out of the back room, at which time he went to the home of the store's owner, Shamsher Sandhu.  Sandhu determined that approximately $1,200 in cash was stolen during the robbery, as well as a bottle of Hennessy cognac, a bottle of Patron tequila, and approximately three cartons of Winston cigarettes.

The second robbery occurred on August 25, 2008, at Circle D, another convenience store.  A sheriff's deputy responded to a report of it.   The deputy saw the cash register open and the store's telephone broken.  The owner of the store, Satpol Deol, who was not present during the robbery, concluded approximately $1,200 was missing from a drawer underneath the cash register.  The clerk on duty at the time was Harbhajan Singh Hothi.  With Doel and Hothi, the deputy viewed a surveillance video recording of the robbery, which showed two robbers entering the store, one was wearing a blue hooded jacket, gloves, and a bandana covering the lower part of his face.  The other wore a black jacket, a knit mask over his face, and gloves.  One of the robbers carried what appeared to be a 12–gauge pump shotgun.  The following day, Kanwar Deep Singh, Deol's video equipment operator and technician, "burn[ed] a CD" of the surveillance recording for the police department at the request of Deol.  The video recording was authenticated by Singh and by Deol, and played for the jury.  It showed the robbers taking cash from the register.  Hothi did not testify.

The third robbery occurred on August 28, 2008, at the same American Food Store hit on July 3.  Once again, there were two robbers.  According to Singh, they wore the same clothing as worn in the first robbery.  Singh and Sandhu were both present.  The robbers again wore gloves.  The one in the blue sweatshirt carried a shotgun.   This robber jumped over the front counter as in the previous robbery and told Sandhu to lie down, while poking him with the barrel of the gun.  The store phone was again smashed. Sandhu saw some liquor bottles removed from the shelves while he was lying face down on the ground.  He did not recall exactly how much cash was taken.

Following the second American Food Store robbery, Sandhu complained of lack of responsiveness, so, on September 2, the sheriff's department placed an electronic tracking device in the store.  It would activate if moved.  Sandhu hid the device in some currency.

The fourth and final robbery took place on September 8, 2008, at the same American Food Store previously hit twice.  Both Singh

---

[2]   Although Singh initially testified it was the robber in black that took him to the back of the store, he acknowledged after watching the videotape of the incident that it was the robber in the blue sweatshirt.

3

and Sandhu were present.  Two robbers entered the store wearing the same clothes as in the previous robberies.  The robber in the blue sweatshirt was carrying a pump shotgun and a duffel bag.  Singh was told to lie down.  During the robbery, $500 to $600 was removed from Sandhu's cash register.  A variety of cigarettes and bottles of Hennessy and Patron were taken.  The robbers also took $150 from Singh's wallet.  The phone was ripped out of the wall.  According to Sandhu, the robber in the blue sweatshirt in each of the robberies had the same build and posture, and the gun was the same on each occasion.

While the robbery was in progress, a peace officer on patrol received an activation signal from an electronic tracking device.  He followed it to the parking lot next to the American Food Store.  His electronic tracker was pointed right inside the store.  While he looked around the parking lot, he "glimpse[d]" someone running out of the front door of the store.  A second person then left out of the front door of the store, wearing a blue hooded sweatshirt and holding a shotgun and a duffel bag.  The robber in the blue sweatshirt disappeared behind the building.  The officer was unable to follow.  A duffel bag was later located in a dumpster behind the store, containing nine packs of "Swisher Sweets" cigars, 10 boxes of Marlboro Lights cigarettes, a bottle of Hennessy, and a bottle of Rémy Martin cognac champagne.

Sometime later, the activation signal was tracked to a moving blue Honda sport utility vehicle (SUV).  When marked patrol cars following the SUV activated their overhead lights and sirens, the driver of the SUV accelerated to a high rate of speed, running several stop signs and traffic lights.  A "tack strip" set in the path of the SUV finally disabled it.

There were two men in the SUV.  They got out and ran, but eventually were apprehended.  They were later identified as defendant and Antoine Morrison.  Defendant was wearing a blue hooded sweatshirt, black jeans, and a black "du-rag," matching the clothes worn by the armed robber that night.  The logo of defendant's employer's name was printed on the sweatshirt, but concealed because the sweatshirt was worn inside out.  Defendant had a left-handed black glove in his pocket.  A corresponding right-handed glove of the same make was found during a search of the area.  Also found in defendant's pocket was a bundle of one dollar bills wrapped around an electronic tracking device.  The shotgun used in the robberies was never located.

Singh and Sandhu participated in a field show-up.  Both witnesses recognized the clothing worn by defendant and Morrison.  Sandhu also recognized their build and posture to be the same as the robbers.

Defendant had a cell phone in his possession when arrested.  In addition to two photos of defendant, the phone contained one photo of a bottle of Patron tequila and another photo of a pile of cigarettes, cigars, "a wad of money," rolls of coins, bottles of Hennessy, and other items.

4

The defense at trial was alibi. Defendant's mother testified she learned her sister had died on July 3 (the date of the first robbery). She said defendant arrived at her home that afternoon and stayed the night. Defendant's brother testified defendant was there the entire evening. Defendant's mother said defendant was at her home on the dates of the first three robberies.

Defendant testified it was not him in the surveillance videos. He claimed he had prearranged to pick up Morrison around 10:30 p.m. on September 8, the date of their final robbery and arrest. He claimed Morrison intended to turn himself in to the police on a warrant the following morning. Defendant said the Morrison gave him "a bunch of loose 1s" to buy gas, which defendant put in his pocket. According to defendant, when he realized he was being pursued by several police cars, he "hit the gas" because Morrison panicked and said, "[W]e got to go."

*People v. White*, No. C065564, 2012 WL 4813278, at *1-3 (Cal. Ct. App. Oct. 10, 2012).

After the California Court of Appeal affirmed his judgment of conviction, petitioner filed a petition for review in the California Supreme Court. Therein, he claimed that: (1) the prosecutor's failure to call a percipient witness to the stand violated his Sixth Amendment right to confrontation; (2) the evidence that he was one of the perpetrators of the robberies, which included his identification by Singh and Sandhu at the field show-up, was insufficient, and his trial counsel improperly failed to challenge his identification at the show-up; (3) prosecutorial misconduct during closing argument violated his right to due process; and (4) his sentence was erroneous and should be re-calculated. Resp't's Lodg. Doc. 12. The petition for review was summarily denied. Resp't's Lodg. Doc. 13. Petitioner did not file any state habeas petitions with respect to his 2010 conviction.

Petitioner filed a second amended habeas corpus petition in this court on May 19, 2015, and a memorandum of points and authorities in support of that petition on the same day. ECF Nos. 29, 30. This court will construe both of these documents together as the operative habeas petition in this matter. Respondent filed an answer on June 9, 2015, and petitioner filed a traverse on July 24, 2015. ECF Nos. 32, 35.

**II. Standards of Review Applicable to Habeas Corpus Claims**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28

5

1   U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

2   application of state law.  *See Wilson v. Corcoran*, 562 U.S. 1,5 (2010); *Estelle v. McGuire*, 502

3   U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

4          Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

5   corpus relief:

6                  An application for a writ of habeas corpus on behalf of a
               person in custody pursuant to the judgment of a State court shall not
7              be granted with respect to any claim that was adjudicated on the
               merits in State court proceedings unless the adjudication of the
8              claim -

9                  (1) resulted in a decision that was contrary to, or involved
               an unreasonable application of, clearly established Federal law, as
10             determined by the Supreme Court of the United States; or

11                 (2) resulted in a decision that was based on an unreasonable
               determination of the facts in light of the evidence presented in the
12             State court proceeding.

13         For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

14  holdings of the United States Supreme Court at the time of the last reasoned state court decision.

15  *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, ___ U.S.

16  ___, 132 S.Ct. 38 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v.

17  Taylor*, 529 U.S. 362, 405-06 (2000)).  Circuit court precedent "may be persuasive in determining

18  what law is clearly established and whether a state court applied that law unreasonably." *Stanley*,

19  633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit

20  precedent may not be "used to refine or sharpen a general principle of Supreme Court

21  jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall*

22  *v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 132 S. Ct. 2148, 2155

23  (2012) (per curiam)).  Nor may it be used to "determine whether a particular rule of law is so

24  widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court,

25  be accepted as correct. *Id.*  Further, where courts of appeals have diverged in their treatment of

26  an issue, it cannot be said that there is "clearly established Federal law" governing that issue.

27  *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

28  /////

1    A state court decision is "contrary to" clearly established federal law if it applies a rule

2 contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

3 precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003).

4 Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

5 writ if the state court identifies the correct governing legal principle from the Supreme Court's

6 decisions, but unreasonably applies that principle to the facts of the prisoner's case.[3] *Lockyer v.*

7 *Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002

8 (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply because that

9 court concludes in its independent judgment that the relevant state-court decision applied clearly

10 established federal law erroneously or incorrectly.  Rather, that application must also be

11 unreasonable." *Williams*, 529 U.S. at 412.  *See also Schriro v. Landrigan*, 550 U.S. 465, 473

12 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

13 review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

14 "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

15 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v.*

16 *Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

17 Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner

18 must show that the state court's ruling on the claim being presented in federal court was so

19 lacking in justification that there was an error well understood and comprehended in existing law

20 beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

21    If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

22 court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*,

23 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008)

24 (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of

25 /////

---

26    [3]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be
27 overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*,
28 384 F.3d 628, 638 (9th Cir. 2004)).

1  § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

2  considering de novo the constitutional issues raised.").

3      The court looks to the last reasoned state court decision as the basis for the state court

4  judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If

5  the last reasoned state court decision adopts or substantially incorporates the reasoning from a

6  previous state court decision, this court may consider both decisions to ascertain the reasoning of

7  the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When

8  a federal claim has been presented to a state court and the state court has denied relief, it may be

9  presumed that the state court adjudicated the claim on the merits in the absence of any indication

10 or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99. This presumption

11 may be overcome by a showing "there is reason to think some other explanation for the state

12 court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).

13 Similarly, when a state court decision on a petitioner's claims rejects some claims but does not

14 expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that

15 the federal claim was adjudicated on the merits. *Johnson v. Williams*, ___ U.S. ___, ___, 133

16 S.Ct. 1088, 1091 (2013).

17     Where the state court reaches a decision on the merits but provides no reasoning to

18 support its conclusion, a federal habeas court independently reviews the record to determine

19 whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v.*

20 *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo

21 review of the constitutional issue, but rather, the only method by which we can determine whether

22 a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no

23 reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

24 reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

25     A summary denial is presumed to be a denial on the merits of the petitioner's claims.

26 *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze

27 just what the state court did when it issued a summary denial, the federal court must review the

28 state court record to determine whether there was any "reasonable basis for the state court to deny

1    relief." *Richter*, 562 U.S. at 98. This court "must determine what arguments or theories ... could

2    have supported, the state court's decision; and then it must ask whether it is possible fairminded

3    jurists could disagree that those arguments or theories are inconsistent with the holding in a prior

4    decision of [the Supreme] Court." *Id.* at 102. The petitioner bears "the burden to demonstrate

5    that 'there was no reasonable basis for the state court to deny relief.'" *Walker v. Martel*, 709 F.3d

6    925, 939 (9th Cir. 2013) (quoting *Richter*, 562 U.S. at 98).

7          When it is clear, however, that a state court has not reached the merits of a petitioner's

8    claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

9    habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462

10   F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

11   **III. Petitioner's Claims**

12          **A. Right to Confrontation**

13          In his first ground for relief, petitioner claims that his Sixth Amendment right to confront

14   the witnesses against him was violated when the prosecutor failed to call Harbhajan Hothi, the

15   clerk at the Circle D convenience store, as a witness at his trial. ECF No. 29 at 3; ECF No. 30 at

16   13.[4] As explained by the California Court of Appeal, the videotape of the Circle D robbery was

17   played for the jury. Petitioner's trial counsel objected to the admission of this videotape on the

18   grounds that petitioner's right to confrontation would be violated if Mr. Hothi did not testify. The

19   trial court ruled that the admission of the videotape without corroborating testimony by Mr. Hothi

20   did not violate petitioner's Sixth Amendment rights because the videotape was not "testimonial"

21   evidence. Reporter's Transcript on Appeal (RT) at 275-76. Accordingly, the court allowed "the

22   testimony regarding the videotape as long as the foundation is laid." *Id.* at 276. Petitioner argues

23   that the videotape could not properly show the "ethnicity" of the perpetrators, if they spoke with

24   an accent, or their "height and weight." ECF No. 30 at 14. He argues that testimony by Mr.

25   Hothi could have provided the jury with this information, thereby helping to exclude him as one

26   /////

27   _____

28          [4]   Page number citations such as this one are to the page numbers reflected on the court's
     CM/ECF system and not to page numbers assigned by the parties.

of the perpetrators.  *Id.*  Petitioner contends that "there were many unanswered questions due to Mr. Hothi's refusal to testify."  *Id.*

Petitioner also complains that Mr. Hothi did not testify even though he was on the prosecution's trial witness list.  Petitioner states that Hothi refused to testify and he faults the prosecutor for failing to issue a subpoena for his attendance.  *Id.*  He states that the prosecutor simply "took Mr. Hothi at his word that he would appear for trial and testify."  *Id.*  Petitioner argues:

> the People had months to prepare for trial, issue subpoenas, meet with witnesses and use many of its office resources to insure that all its witnesses would be present during trial.  A verbal agreement is not sufficient enough to prove a showing of "reasonable diligence."

*Id.* at 21.[5]

In a separate but related claim, petitioner argues that the trial court violated his right to due process in allowing the prosecutor to introduce into evidence the videotape of the Circle D robbery without corroborating testimony by Mr. Hothi.  He contends that the trial court's ruling that Mr. Hothi was "unavailable" to testify "placed restrictions on the defense that they were unable to overcome."  *Id.* at 21-22.  Although these arguments are articulated as a separate claim, the court will analyze them as part of petitioner's Confrontation Clause claim.

### 1. State Court Decision

The California Court of Appeal denied petitioner's claim based on the Confrontation Clause, reasoning as follows:

/////

/////

---

[5]   The state court record reflects that the prosecutor issued a subpoena for Mr. Houthi's testimony for an earlier trial date but did not re-issue the subpoena for the trial date that actually went forward.  RT at 257.  The prosecutor explained that Mr. Hothi had promised to appear for trial "every other time he has been made aware of the dates."  *Id.*  However, on the date he was scheduled to testify, Mr. Hothi was out of state driving a truck as part of his job as a long-haul truck driver.  *Id.* at 256.  The prosecutor offered to send Mr. Hothi a plane ticket but Hothi "indicated he was unwilling to do a flight because if he was not present when the truck got there, he would not get paid."  *Id.* at 257.

**A. Right of Confrontation regarding Victim of August 25 Robbery**

Defendant contends he was deprived of his right of confrontation with regard to the August 25, 2008, robbery of Circle D because the store clerk, Hothi, did not testify and, therefore, "was not present to corroborate if the robbery occurred, if he was the victim[, and if it was] him in the video."  We disagree.

The prosecution may prove the elements of an offense through any admissible evidence.  There is no requirement the testimony of the clerk in a convenience store robbery be presented, or his identity established to prove who committed a crime.  Here, a surveillance camera captured the robbery in its entirety, and a copy of the surveillance video recording was fully authenticated and admitted into evidence and played for the jury.  Hothi's corroboration was not required to prove defendant committed the crime.

Defendant maintains the testimony of the deputy sheriff regarding the Circle D robbery was hearsay.  To the contrary, the deputy testified about what he observed when he entered the convenience store and what he saw on the surveillance recording, which was properly admitted into evidence.  The surveillance recording itself was not hearsay.  "Photographs and videotapes are demonstrative evidence, depicting what the camera sees.  [Citations.]  They are not testimonial and they are not hearsay, that is, 'evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated . . . .'  [Citation.]  Thus, the confrontation clause does not preclude the[ir] admission . . . ."  (*People v. Cooper* (2007) 148 Cal.App.4th 731, 746, fn. omitted; *see People v. Goldsmith* (2011) 193 Cal.App.4th Supp. 1; see Evid.Code, § 1553 [video images presumed to be accurate representation of images they purport to represent].)

Accordingly, defendant's right of confrontation was not violated.

*White*, 2012 WL 4813278, at *3-4.

## 2. <u>Applicable Law</u>

The Sixth Amendment to the United States Constitution grants a criminal defendant the right "to be confronted with the witnesses against him."  U.S. CONST. amend. VI.  "The 'main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.'"  *Fenenbock v. Director of Corrections for California*, 692 F.3d 910, 919 (9th Cir. 2012) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986)).  The Confrontation Clause applies to the states through the Fourteenth Amendment.  *Pointer v. Texas*, 380 U.S. 400, 406 (1965).

11

1    In *Crawford v. Washington*, 541 U.S. 36 (2004), the United States Supreme Court held

2    that the Confrontation Clause bars the state from introducing into evidence out-of-court

3    statements which are "testimonial" in nature unless the witness is unavailable and the defendant

4    had a prior opportunity to cross-examine the witness, regardless of whether such statements are

5    deemed reliable.  The *Crawford* rule applies only to hearsay statements that are "testimonial" and

6    does not bar the admission of non-testimonial hearsay statements.  *Id.* at 42, 51, 68.  *See also*

7    *Whorton v. Bockting*, 549 U.S. 406, 420 (2007) ("the Confrontation Clause has no application to"

8    an "out-of-court nontestimonial statement.")  Although the *Crawford* court declined to provide a

9    comprehensive definition of the term "testimonial," it stated that "[s]tatements taken by police

10   officers in the course of interrogations are . . . testimonial under even a narrow standard."

11   *Crawford*, 541 U.S. at 52.  The court also provided the following "formulations" of a "core class"

12   of testimonial statements: (1) "ex parte in-court testimony or its functional equivalent – that is,

13   material such as affidavits, custodial examinations, prior testimony that the defendant was unable

14   to cross-examine, or similar pretrial statements that declarants would reasonably expect to be

15   used prosecutorially;" (2) "extrajudicial statements . . . contained in formalized testimonial

16   materials, such as affidavits, depositions, prior testimony, or confessions;" and (3) "statements

17   that were made under circumstances which would lead an objective witness reasonably to believe

18   that the statement would be available for use at a later trial."  *Id.* at 51-52.

19           **3.  Analysis**

20           Petitioner's claim that his Sixth Amendment right to confrontation was violated by the

21   trial court's admission into evidence of the videotape of the Circle D robbery without

22   corroborating testimony by Mr. Hothi lacks merit and will be denied.  The Confrontation Clause

23   "applies to 'witnesses' against the accused - in other words, those who 'bear testimony.'"

24   *Crawford*, 541 U.S. at 51 (quoting 2 N. Webster, *An American Dictionary of the English*

25   *Language* (1828)).  If the testimony of a witness is admitted at a trial through a tape recording or

26   other electronic device, the witness should be available for cross-examination.  *Peak v. Webb*, 673

27   F.3d 465, 467, 472-73 (6th Cir. 2012).  *See also Melendez–Diaz v. Massachusetts*, 557 U.S. 305

28   (2009) (the Confrontation Clause requires the prosecution to subpoena an available affiant if it

1    chooses to introduce that affiant's ex parte testimonial statement against a defendant).  In this

2    case, however, the videotape of the Circle D robbery did not contain statements by Mr. Hothi or

3    anyone else.  As explained by the California Court of Appeal, the videotape simply depicted what

4    the camera saw; it did not "bear testimony" and was not a substitute for Hothi's live testimony.

5    Under these circumstances, no Confrontation Clause issue is raised because there was no

6    testimonial evidence to confront.  *Id. Cf. Bullcoming v. New Mexico*, 564 U.S. 647, 672 (2011)

7    (conc. opn. of Sotomayor, J.) (the prosecution's introduction only of "machine-generated results,

8    such as a printout from a gas chromatograph," may not violate the defendant's confrontation

9    right); *United States . v. Moon*, 512 F.3d 359, 362 (7th Cir. 2008) ("the instruments' readouts are

10   not 'statements,' so it does not matter whether they are 'testimonial'"); *United States v.*

11   *Washington*, 498 F.3d 225, 231 (4th Cir. 2007) (the raw data generated by diagnostic machines do

12   not constitute "statements," and the machines are not "declarants").

13         The prosecution's use at trial of testimonial out-of-court statements ordinarily violates the

14   defendant's right to confront the maker of the statements unless the declarant is unavailable to

15   testify and the defendant had a prior opportunity for cross-examination.  U.S.C.A. Const. Amend.

16   6.  In other words, "[w]here testimonial evidence is at issue, the Sixth Amendment demands what

17   the common law required: unavailability and a prior opportunity for cross-examination."

18   *Crawford*, 541 U.S. at 68.  Witness unavailability only comes into play if the testimony of a

19   witness is introduced into evidence without that witness being present in the courtroom.  Because

20   in this case there was no testimonial evidence to confront, petitioner did not have a federal

21   constitutional right to force the prosecution to call Mr. Hothi as a trial witness.  Therefore,

22   Hothi's availability or unavailability is irrelevant.

23         Petitioner's claim that the prosecutor violated his Sixth Amendment right to cross-

24   examine Mr. Hothi about the robbery at the Circle D convenience store by failing to call Hothi as

25   a trial witness also fails.  Neither the state, nor any other party, is under a duty, constitutional or

26   otherwise, to call any particular witness.  *See United States v. Bond*, 552 F.3d 1092, 1097 (9th

27   Cir. 2009).  Rather, "the 'calling or not calling of witnesses is a matter normally within the realm

28   of the judgment of counsel' . . . ."  *Frank v. Brookhart*, 877 F.2d 671, 674 (8th Cir. 1989)

1   (quoting *Sherrill v.. Wyrick*, 524 F.2d 186, 190 (8th Cir. 1975)).  The prosecutor's duty is only to

2   prove every element of the charges beyond a reasonable doubt.  *See In re Winship*, 397 U.S. 358,

3   361-62 (1970).[6]

4        Nor was the prosecutor required to call every person on his pretrial witness list.  "It is

5   elementary that litigants are not *required* to call every witness identified on their witness lists."

6   *Bond*, 552 F.3d at 1097 (emphasis in original).  "The witness list simply provides notice to the

7   court and to opposing counsel of the witnesses who may be presented at trial."  *See also United*

8   *States v. Fisher*, 484 F.2d 868, 870 (4th Cir. 1973) ("We agree that the Government must not

9   suppress evidence favorable to a defendant in any prosecution but, for obvious reasons, a United

10  States Attorney is not bound to call to the witness stand every person who appears pursuant to a

11  subpoena issued and served at Government direction") (quoting *United States v. Wallace*, 300

12  F.2d 525, 530 (4th Cir. 1962)); *Buchanan v. Cate*, No. CIV. 10-0423 BTM NLS, 2011 WL

13  10730141, at *41 (S.D. Cal. Sept. 30, 2011), report and recommendation adopted as modified sub

14  nom. *Buchanan v. Beard*, No. CIV. 10-0423 GPC NLS, 2013 WL 2390435 (S.D. Cal. May 29,

15  2013) ("there is no federal constitutional requirement for the prosecutor to call any particular

16  witness"); *Othman v. City of Chicago*, No. 11-CV-5777, 2016 WL 612809, at *7 (N.D. Ill. Feb.

17  16, 2016) (same).

18       For the reasons set forth above, petitioner's Sixth Amendment right to confront the

19  witnesses against him was not violated by the prosecutor's failure to call Mr. Hothi as a trial

20  witness or by the trial court's admission into evidence of the videotape of the Circle D robbery.

21  The state court reasonably applied federal law to find these Sixth Amendment claims meritless.

22  Accordingly, petitioner is not entitled to relief on his claims based on the Confrontation Clause.

23  /////

24  /////

25  _____

26       [6]  Although the prosecution has no constitutional duty to call a witness, the failure to call an important witness can lead to an inference that the witness' testimony would have been unfavorable to the government.  *Graves v. United States*, 150 U.S. 118, 121 (1893) ("The rule, even in criminal cases, is that, if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable.").

28

**B.  Improper Admission into Evidence of Photographs from Petitioner's Cell Phone**

In his next ground for relief, petitioner claims that the trial court violated his right to due process in allowing the introduction into evidence of photographs from his cell phone depicting Patron tequila, money, alcohol, cigarettes, coin rolls, food, and other items.  ECF No. 29 at 29; ECF No. 30 at 15.  Petitioner argues that these photographs (contained in People's Exhibits 42 and 43) did not match the items taken during the robberies and that time stamps affixed to the photographs shows they were not taken on or near the dates on which the robberies occurred. ECF No. 30 at 19-20.  Petitioner explains that the time stamps on some of the photographs show that they were sent to him by someone else after the first three robberies were committed, and that other photographs were time-stamped before the robberies were committed but were stored in his cell phone only much later.  *Id.* at 19.  Petitioner includes as exhibits undecipherable photographs that apparently came from his cellphone, with metadata and other information pertaining to these photographs.  *Id.* at 62-69.  He argues this information demonstrates that the photographs were not related to the robberies.  In short, petitioner claims that the photographs did not actually depict items that were stolen in the robberies but were introduced in an improper and prejudicial attempt to convince the jury that they did.  *Id.* at 19-20.[7]

**1.  State Court Decision**

The California Court of Appeal denied this due process claim, reasoning as follows:

**B. Admissibility of Cell Phone Photos**

Defendant also claims the photos on his cell phone of a bottle of Patron tequila and a pile of money, liquor, cigarettes, and other items should not have been admitted because they were more prejudicial than probative.  Again, we disagree.

Evidence is relevant if it has "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid.Code, § 210.)  Under Evidence Code section 352, the trial court has discretion to "exclude evidence if its probative value is substantially outweighed by the probability

---

[7]   Testimony at trial established that People's Exhibit 42 contained "numerous items . . . , including a couple bottles of Hennessey whiskey, some Marlboro, Newport cigarettes, some other type of cigars, Black Wild cigars, . . . a wad of money at the one corner, and some rolls of coins at the bottom corner."  RT at 214.  People's Exhibit 43 was a photograph of "a close-up shot of a bottle of Patron Tequila."  *Id.* at 215.

that its admission will . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." "[T]he trial court is 'vested with wide discretion in determining relevance under this standard.' [Citation.]" (*People v. Cain* (1995) 10 Cal.4th 1, 32.) "Prejudice for purposes of Evidence Code section 352 means evidence that tends to evoke an emotional bias against the defendant with very little effect on issues . . . ." (*People v. Crew* (2003) 31 Cal.4th 822, 842.)   The trial court's determination is reviewed for abuse of discretion.

We conclude the photos in question were properly admitted.  The main issue at trial was identity, and the photos were probative on this issue.  One of the photos was of a bottle of Patron tequila, an item that was taken in at least two of the robberies.  The other photo depicted a pile of money, cigarettes, liquor bottles - and in particular, bottles of Patron and Hennessy - and other convenience store type items that were consistent with the types of items stolen in the robberies.  Although not all of the items in this photo were specifically described by the robbery victims, this went to the weight of the evidence, not its admissibility.  We discern no undue prejudice from the admission of this evidence.[8]

*White*, 2012 WL 4813278, at *4.

## 2. Analysis

The California Court of Appeal concluded that the introduction into evidence of the photographs from petitioner's cell phone did not violate the California Evidence Code.  That conclusion is binding on this court.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus").  In federal court, a writ of habeas corpus will be granted for an erroneous admission of evidence "only where the 'testimony is almost entirely unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings.'" *Mancuso v. Olivarez*, 292 F.3d 939, 956 (9th Cir. 2002), *overruled on other grounds by Slack v. McDaniel*, 529 U.S. 473 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983)).  Evidence violates due process only if "there are no permissible inferences the jury may draw from the evidence." *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991).  Evidence must "be of such quality

---

[8]   Defendant also contends his attorney "failed to properly investigate [the] photos."  As defendant does not develop this claim, and as there is nothing in the record to support it, we decline to address it.

1   as necessarily prevents a fair trial." *Id.* (quoting *Kealohapauole v. Shimoda*, 800 F.2d 1463 (9th

2   Cir. 1986)).

3                    Even so, as the Ninth Circuit has observed:

4                    The Supreme Court has made very few rulings regarding the
                     admission of evidence as a violation of due process.  Although the
5                    Court has been clear that a writ should be issued when
                     constitutional errors have rendered the trial fundamentally unfair
6                    (citation omitted), it has not yet made a clear ruling that admission
                     of irrelevant or overtly prejudicial evidence constitutes a due
7                    process violation sufficient to warrant issuance of the writ

8   *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009).  Therefore, "under AEDPA, even

9   clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit

10  the grant of federal habeas corpus relief if not forbidden by 'clearly established Federal law,' as

11  laid out by the Supreme Court."  *Id.  See also Greel v. Martel*, No. 10-16847, 472 F. App'x. 503,

12  504, 2012 WL 907215, *1 (9th Cir. Mar. 19, 2012) ("There is likewise no clearly established

13  federal law that admitting prejudicial evidence violates due process.").

14          In light of these authorities, the state courts' rejection of petitioner's claim that the trial

15  court violated his right to due process in allowing the introduction into evidence of the

16  photographs on his cellphone does not support habeas relief under AEDPA.  Petitioner has cited

17  no "clearly established Federal law" to demonstrate that evidence of this nature is so irrelevant or

18  overtly prejudicial as to constitute a due process violation.  Under the strict standards of AEDPA,

19  the trial court's decision to admit these photographs into evidence – even if it was clearly

20  erroneous – cannot warrant issuance of the writ.  *Yarborough*, 568 F.3d at 1101.

21          On collateral review of a state court criminal judgment under 28 U.S.C. § 2254, an error is

22  harmless unless it had "a substantial and injurious effect or influence in determining the jury's

23  verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993).  In *Fry v. Pliler*, 551 U.S. 112, 121-

24  22 (2007), the United States Supreme Court clarified that "in § 2254 proceedings a federal court

25  must assess the prejudicial impact of constitutional error in a state-court criminal trial under the

26  'substantial and injurious effect' standard set forth in *Brecht* 507 U.S. 619."  *Fry*, 551 U.S. at

27  121-22.  *See also Davis v. Ayala*, ___ U.S. ___, 135 S. Ct. 2187, 2197-98 (2015).  Assuming

28  *arguendo* that the trial court erred in allowing the introduction into evidence of these photographs

1  from petitioner's cell phone, petitioner has failed to demonstrate that the error had a "substantial

2  and injurious effect or influence in determining the jury's verdict."  The photographs petitioner

3  attaches to his habeas petition are too dark to decipher and the attached metadata and other

4  identifying information is not self-explanatory and does not confirm the exact circumstances

5  under which these photographs got on petitioner's cellphone.[9]  Thus, petitioner is unable to prove

6  his allegations about when the photographs were taken and/or were sent to his phone.  Further,

7  given the strength of the evidence against petitioner, which included the fact that petitioner and

8  Morrison fled from the police after the tracking device led them to petitioner's car, that petitioner

9  and Morrison were wearing clothes that matched the clothing worn by the armed robber, that

10  petitioner was apprehended with cash taken from the fourth robbery, and that petitioner and

11  Morrison were identified at a showup as resembling the robbers in three of the robberies, the

12  introduction into evidence of the above-described photographs, although admittedly prejudicial to

13  the defense case, would not have had a substantial effect on the verdict.

14         Accordingly, for the reasons set forth above, petitioner is not entitled to habeas relief on

15  this due process claim.

16         **C. Prosecutorial Misconduct**

17         In his next ground for relief, petitioner claims that the prosecutor committed misconduct

18  during closing argument.  He argues that the prosecutor "intentionally introduced evidence known

19  to be false," which deliberately misled the court and the jury about whether he was one of the

20  perpetrators of the robberies.  He also argues that the prosecutor "misstated facts of the

21  photographs."  ECF No. 30 at 23.  Petitioner attaches excerpts of the prosecutor's closing

22  argument wherein he argued that the photographs taken from petitioner's cell phone depicted "the

23  same items" that were taken in the robberies, and speculated that petitioner must have come back

24  from the robberies and photographed the items he stole.  *Id.* at 50, 52.  Petitioner contends that the

25  prosecutor knew this argument was false and misleading and that the misconduct had a

26

27         [9]   The Clerk's Transcript on Appeal contains a photograph of the items contained in
People's Exhibits 42 and 43, but they are also too dark to decipher.  *See, e.g.,* Clerk's Augmented

28  Transcript on Appeal at 18-19.

1    "substantial and injurious effect or influence in determining the jury's verdict" and "infected the

2    integrity of the proceedings." *Id.* at 24.

3                      **1.  State Court Decision**

4         The California Court of Appeal denied this claim, reasoning as follows:

5              **Prosecutorial Misconduct**

6              Defendant alleges the deputy district attorney committed
              prosecutorial misconduct during his closing argument by making
7              various alleged misstatements about the evidence. They included:
              (1) arguing that defendant's mother and brother did not sit with him
8              the entire night of the first robbery and "misstat [ing]" some details
              of his brother's testimony; (2) suggesting that the jury compare
9              defendant's voice to the voice of the robber on the surveillance
              videos; (3) noting that defendant fit the general description of the
10             robber; and (4) stating that one of the cell phone photos depicted
              "the same stuff" as was taken in the robberies. But defendant's trial
11             attorney did not object to any of these comments. "'[A] defendant
              may not complain on appeal of prosecutorial misconduct unless in a
12             timely fashion - and on the same ground - the defendant made an
              assignment of misconduct and requested that the jury be
13             admonished to disregard the impropriety.' [Citations.]" (*People v.
              Stanley* (2006) 39 Cal.4th 913, 952.)  Consequently, defendant has
14             forfeited this argument for purposes of appeal.

15             Even if we were to ignore the failure to object, we would find
              defendant's claim meritless. "Regarding the scope of permissible
16             prosecutorial argument, ""a prosecutor is given wide latitude
              during argument. The argument may be vigorous as long as it
17             amounts to fair comment on the evidence, which can include
              reasonable inferences, or deductions to be drawn therefrom.'""
18             [Citations.]" (*People v. Stanley, supra*, 39 Cal.4th at pp. 951–952.)
              None of the comments by the prosecuting attorney exceeded these
19             limitations.

20   *White*, 2012 WL 4813278, at *5.

21                       **2.  Procedural Default**

22         As set forth above, the California Court of Appeal ruled, in part, that petitioner forfeited

23   his challenges to the prosecutor's closing argument because his trial counsel failed to make a

24   contemporaneous objection to that argument. Respondent argues the state court's finding of

25   waiver based on the lack of a contemporaneous objection constitutes a state procedural bar

26   precluding this court from addressing the merits of petitioner's claim of prosecutorial misconduct.

27   ECF No. 32 at 17-18.

28   /////

1        State courts may decline to review a claim based on a procedural default.  *Wainwright v.*

2   *Sykes*, 433 U.S. 72 (1977).  As a general rule, a federal habeas court "'will not review a question

3   of federal law decided by a state court if the decision of that court rests on a state law ground that

4   is independent of the federal question and adequate to support the judgment.'"  *Calderon v.*

5   *United States District Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting *Coleman v.*

6   *Thompson*, 501 U.S. 722, 729 (1991)).  The state rule is only "adequate" if it is "firmly

7   established and regularly followed."  *Id.*  (quoting *Ford v. Georgia*, 498 U.S. 411, 424 (1991));

8   *Bennett v. Mueller*, 322 F 3d 573, 583 (9th Cir. 2003) ("[t]o be deemed adequate, the state law

9   ground for decision must be well-established and consistently applied.")  The state rule must also

10  be "independent" in that it is not "interwoven with the federal law."  *Park v. California*, 202 F.3d

11  1146, 1152 (9th Cir. 2000) (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983)).  Even if

12  the state rule is independent and adequate, the claims may be heard if the petitioner can show:  (1)

13  cause for the default and actual prejudice as a result of the alleged violation of federal law; or (2)

14  that failure to consider the claims will result in a fundamental miscarriage of justice.  *Coleman*,

15  501 U.S. at 749-50.

16       Respondent has met his burden of adequately pleading an independent and adequate state

17  procedural ground as an affirmative defense.  *See Bennett*, 322 F.3d at 586.  Although the state

18  appellate court addressed petitioner's prosecutorial misconduct claims on the merits, it also

19  expressly held that the claims were waived on appeal because of defense counsel's failure to

20  object.  Petitioner has failed to meet his burden of asserting specific factual allegations that

21  demonstrate the inadequacy of California's contemporaneous-objection rule as unclear,

22  inconsistently applied or not well-established, either as a general rule or as applied to him.

23  *Bennet,* 322 F.3d at 586; *Melendez v. Plier*, 288 F.3d 1120, 1124-26 (9th Cir. 2002).  There is no

24  dispute that petitioner's trial counsel failed to object to the prosecutor's remarks at the time they

25  were made.  Petitioner's claim of prosecutorial misconduct therefore appears to be procedurally

26  barred.  *See Coleman*, 501 U.S. at 747; *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Paulino v.*

27  *Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004).  However, assuming *arguendo* that the claim is

28  not barred, it fails on its merits.

1        ### 3. <u>Applicable Legal Principles</u>

2        A criminal defendant's due process rights are violated when a prosecutor's misconduct

3    renders a trial fundamentally unfair. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Claims of

4    prosecutorial misconduct are reviewed "'on the merits, examining the entire proceedings to

5    determine whether the prosecutor's [actions] so infected the trial with unfairness as to make the

6    resulting conviction a denial of due process.'" *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir.

7    1995) (citation omitted). *See also Greer v. Miller*, 483 U.S. 756, 765 (1987); *Donnelly v.*

8    *DeChristoforo*, 416 U.S. 637, 643 (1974); *Towery v. Schriro*, 641 F.3d 300, 306 (9th Cir. 2010).

9    Relief on such claims is limited to cases in which the petitioner can establish that prosecutorial

10   misconduct resulted in actual prejudice. *Darden*, 477 U.S. at 181-83. *See also Towery*, 641 F.3d

11   at 307 ("When a state court has found a constitutional error to be harmless beyond a reasonable

12   doubt, a federal court may not grant habeas relief unless the state court's determination is

13   objectively unreasonable"). Prosecutorial misconduct violates due process when it has a

14   substantial and injurious effect or influence in determining the jury's verdict. *See Ortiz-Sandoval*

15   *v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996).

16       "Improper argument does not, per se, violate a defendant's constitutional rights." *Jeffries*

17   *v. Blodgett*, 5 F.3d 1180, 1191 (9th Cir. 1993). In considering claims of prosecutorial misconduct

18   involving allegations of improper argument, the court must examine the likely effect of the

19   statements in the context in which they were made and determine whether the comments so

20   infected the trial with unfairness as to render the resulting conviction a denial of due process.

21   *Darden*, 477 U.S. at 181-83; *Donnelly*, 416 U.S. at 643; *Turner v. Calderon*, 281 F.3d 851, 868

22   (9th Cir. 2002). In fashioning closing arguments, prosecutors are allowed "reasonably wide

23   latitude," *United States v. Birges*, 723 F.2d 666, 671-72 (9th Cir. 1984), and are free to argue

24   "reasonable inferences from the evidence." *United States v. Gray*, 876 F.2d 1411, 1417 (9th Cir.

25   1989). *See also Ducket v. Godinez*, 67 F.3d 734, 742 (9th Cir. 1995). "[Prosecutors] may strike

26   'hard blows,' based upon the testimony and its inferences, although they may not, of course,

27   employ argument which could be fairly characterized as foul or unfair." *United States v.*

28   *Gorostiza*, 468 F.2d 915, 916 (9th Cir. 1972). "[I]t 'is not enough that the prosecutors' remarks

1  were undesirable or even universally condemned.'" *Darden*, 477 U.S. at 181 (citation omitted).

2  The issue is whether the "remarks, in the context of the entire trial, were sufficiently prejudicial to

3  violate [petitioner's] due process rights." *Donnelly*, 416 U.S. at 639; *United States v. Robinson*,

4  485 U.S. 25, 33 (1988) ("[P]rosecutorial comment must be examined in context. . . .")

5  **4.  Analysis**

6  Petitioner argues, as he did in the preceding claim, that the time stamp on his cell phone,

7  which allegedly registered when the photographs were taken and downloaded on the phone,

8  demonstrates that the items depicted in the photographs were not taken from the store robberies.

9  He also contends that the brand of tequila and cigarettes depicted in the photographs does not

10  match the exact brands of tequila and cigarettes taken in the robberies, and that "the sheriff report

11  of inventoryed stolen items are different from the items in People's exhibit 42 and 43."  ECF No.

12  35 at 28.  Petitioner contends that since the items in the cell phone photograph don't match the

13  stolen items exactly, they have no relevance to any issue at his trial.[10]  *Id.*

14  Petitioner also argues that the prosecutor was in possession of the time stamp information

15  that made it clear the photographs did not depict stolen property.  He alleges that "the prosecution

16  knew the dates/times these photo were took those dates/times are not consistent with the dates of

17  the robberies" and that "the items in the photos are a completely different brand of alcohol and

18  cigarettes." *Id.* at 26.  Petitioner argues that "the prosecution misrepresented the photos to fit his

19  theory and connect petitioner to the first three robberies which petitioner wasn't identified nor

20  was there physical evidence to connect petitioner to the robberies." *Id.* at 27.

21  /////

22  /////

23  _____

24  [10]   More specifically, petitioner explains that items stolen in the first robbery included
cash, a pocket knife, seven videos, one bottle of "Patron Tequila," one bottle of "Hennessy's"
cognac, and three cartons of Winston cigarettes.  *Id.* at 21.  He goes on to explain that the items
25  depicted in People's Exhibit 42 were cash, coin rolls, two bottles of Hennessy "V.S.O.P." cognac
(which is not the same as Hennessy's cognac), Marlboro cigarettes (as distinct from the Winston
26  cigarettes stolen in the first robbery), cigars, and a can of peanuts.  *Id.*  Petitioner explains that
only cash was stolen during the second and third robberies and that the items stolen during the
27  fourth robbery were recovered at the scene.  Accordingly, he focuses his arguments on the items
stolen from the first robbery, which were never recovered.
28

1       As noted above, although petitioner has attached some photographs to his petition they do

2   not establish all of the specific circumstances surrounding the taking and storage of these

3   photographs and/or how they got on his phone.  In his argument challenging the admission of

4   these photographs into evidence, petitioner's trial counsel conceded that the items depicted were

5   "similar to the merchandise that was taken in some of these robberies."  However, he argued that

6   "what we don't know is how the photographs got there or when they got there or under what

7   circumstances they got there, whether they were taken by that phone or whether they were

8   downloaded or sent to that phone."  ECF No. 30 at 31.  There is no competent evidence before

9   this court that the prosecutor knew the photographs on petitioner's cell phone did not depict items

10  stolen in the robberies.

11      The court also notes that petitioner testified that the pictures contained in People's Exhibit

12  42 were forwarded to his cell phone by Antoine Morrison and that he took the picture of the

13  Patron tequila himself about three years prior to his trial testimony.  *See* RT at 377-78, 393.

14  Through this testimony, the jury was made aware of petitioner's argument that the photographs

15  did not depict the items stolen in the robberies but were either taken by him prior to the robberies

16  or were transferred to his phone from another phone.[11]  Notwithstanding petitioner's testimony in

17  this regard, the jury rendered a guilty verdict.

18      Under the circumstances of this case, and for the reasons set forth above, the prosecutor's

19  argument that the pictures on the cell phone were most likely taken by petitioner to document the

20  items he had stolen during the robberies did not render petitioner's trial fundamentally unfair.

21  The prosecutor's remarks were a fair inference from the evidence and were therefore not

22  improper.  In addition, as noted above, there is no evidence before the court that the prosecutor

23  made any argument that he knew to be false.  Because the prosecutor's comments did not violate

24  petitioner's right to due process, he is not entitled to relief on this claim.

25  /////

26

27      [11]   In his ruling allowing the introduction of the photographs into evidence, the trial judge
    opined that "the origin of the photos goes to the weight of this evidence, not the admissibility of

28  it, so I'm going to allow it."  RT at 19.

**IV. Conclusion**

       For the foregoing reasons, IT IS HEREBY ORDERED that:

      1. Petitioner's application for a writ of habeas corpus is denied.

      2. The court declines to issue the certificate of appealability referenced in 28 U.S.C. § 2253.

      3. The Clerk is directed to close this case.

DATED:  December 21, 2016.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE